|   |   |
|---|---|
| 1 |  |
| 2 |  |
| 3 |  |
| 4 |  |
| 5 |  |
| 6 |  |
| 7 |  |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MELANIE J. FLOYD,

        Plaintiff,

   v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

CASE NO.    C08-5700FDB-KLS

REPORT AND RECOMMENDATION

Noted for October 9, 2009

Plaintiff, Melanie J. Floyd, has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 36 years old.[1] Tr. 19. She has a high school education, has completed some college course work and has past work experience as a sewing and hemming worker, painter of pencils and

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

end

REPORT AND RECOMMENDATION
Page - 1

REPORT AND RECOMMENDATION
Page - 1

cleaner. Tr. 58, 220, 318.

Plaintiff filed an application for SSI benefits in June 1986, alleging disability due to a learning disorder. Tr. 12. A constructive application for disability insurance benefits also was made. Id. Plaintiff's applications were denied on December 1, 1997, and she did not seek further review of that determination. Id. On May 2, 2002, plaintiff again filed applications for disability insurance and SSI benefits, alleging disability as of July 1, 1992, and September 1, 2001, respectively, due to an anxiety disorder, depression, tooth decay, and being a slow learner. Tr. 12, 44-46, 52, 151-53. Her applications were denied initially and on reconsideration. Tr. 19-20, 23, 28, 154-56, 160.

A hearing was held before an administrative law judge ("ALJ") on July 1, 2004, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 164-207. On October 25, 2005, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically that she had the residual functional capacity to perform her past relevant work. Tr. 12-18. Plaintiff's request for review was denied by the Appeals Council on August 25, 2006, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981, § 416.1481.

On October 23, 2006, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. Floyd v. Astrue, C06-5608RJB-KLS (Dkt. #1). On May 10, 2007, the undersigned issued a report and recommendation, finding that the ALJ erred in assessing plaintiff's residual functional capacity, and recommending that the Court remand the matter to the Commissioner for further consideration thereof and of her capability of returning to her past relevant work, and, if necessary, her ability to perform other work existing in significant numbers in the national economy. Tr. 222-34. On June 1, 2007, the Court adopted the undersigned's report and recommendation. Tr. 221.

On remand, a second administrative hearing was held before the same ALJ on February 27, 2008, at which, plaintiff, represented by counsel, appeared and testified, as did a medical expert and a different vocational expert. Tr. 284-331. On July 18, 2008, the ALJ issued a decision, again determining plaintiff to be not disabled, this time finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

           engaged in substantial gainful activity since her amended alleged onset date of disability;

    (2)    at step two, plaintiff had "severe" impairments consisting of a learning disorder, reading and mathematics disorders, posttraumatic stress disorder, and a depressive disorder;

    (3)    at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

    (4)    after step three but before step four, plaintiff had the residual functional capacity to perform work with no exertional limitations, with certain other non-exertional limitations; and

    (5)    at step four, plaintiff was capable of performing her past relevant work as a cleaner.

Tr. 211-220. It does not appear from the record that the Appeals Council assumed jurisdiction of the case. 20 C.F.R. § 404.984, § 416.1484. The ALJ's decision therefore became the Commissioner's final decision after sixty days. Id.

On November 21, 2008, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1). The administrative record was filed with the Court on February 24, 2009. (Dkt. #12). Plaintiff argues that because the ALJ in her latest decision erred in failing to properly consider the report and findings of Janis Lewis, Ph.D., and Clifford Thomas, Ph.D., neither the assessed residual functional capacity nor the determination that past relevant work could be performed were accurate, and thus that this matter should be reversed and remanded to the Commissioner for further administrative proceedings. For the reasons set forth below, however, the undersigned agrees with defendant that such error was harmless, and therefore recommends that the ALJ's decision be affirmed.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749

F.2d 577, 579 (9th Cir. 1984).

If a disability determination "cannot be made on the basis of medical factors alone at step three of the sequential disability evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. The RFC assessment thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

As noted above, the ALJ in her decision on remand assessed plaintiff with a residual functional capacity that included "**no exertional limitations**," but which did include the following additional non-exertional limitations:

> **. . . She needs to be taught in a "hands-on" situation which is well-supervised and which allows adequate time for new learning to crystalize. Given the claimant's moderately impaired auditory memory, the use of a Dictaphone could be extremely important in helping her review oral instructions as many times as needed before she commits them to memory. Pictorial instructions would be preferable whenever possible. Given such an approach, the claimant could be expected to operate routinized equipment in business, industrial, and medical settings. She could also be expected to learn and perform jobs with a lengthy number of routinized steps. However, the claimant in no way could be expected to "troubleshoot" or to deal well with any unexpected deviations from an established routine.**

Tr. 215 (emphasis in original). Plaintiff argues the ALJ erred here, because she failed to properly consider the report and findings of Dr. Lewis and Dr. Clifford, who completed a psychiatric review technique form, in which they found plaintiff had moderate difficulties in maintaining social functioning. Tr. 137. At the same time, Drs. Lewis and Clifford also completed a mental residual functional capacity assessment form,

in which they reviewed a number of more specific mental functional areas, and found in relevant part that plaintiff was moderately limited in her ability to interact appropriately with the general public, but mildly limited in her ability to get along with co-workers or peers. Tr. 141.

The ALJ did not address these findings in her decision. This omission, plaintiff asserts, caused the above residual functional capacity assessment to be inaccurate, and precluded the ALJ from finding her to be capable of performing her past relevant work as a cleaner. Defendant admits, and the undersigned does find as well, that such an omission was error on the part of the ALJ. Although an ALJ "need not discuss *all* evidence presented" to him or her, he or she still must explain why "significant probative evidence has been rejected." Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original); see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

Since a non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record," and since no other medical evidence in the record, opinion or otherwise, contradicts the above findings from Drs. Lewis and Clifford regarding social functioning, the ALJ erred in failing to address them. Lester, 81 F.3d at 830-31; Tonapetyan, 242 F.3d at 1149. As asserted by defendant, however, that error was harmless. An error is harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

Plaintiff argues the ALJ's error in failing to consider the social functioning limitations opined by Dr. Lewis and Dr. Clifford is not harmless, because to so find, the Court would have to impermissibly assume the ALJ would interpret those limitations in such a way as to not eliminate the ability to perform the job of cleaner. For example, plaintiff asserts that while the ALJ made a more general determination at step three of the sequential disability evaluation process that she had moderate difficulties in her ability to function socially (Tr. 215), the Court is left to speculate how the ALJ would make the more detailed RFC assessment required at steps four and five of that process outlined above. But the Court hardly is required to speculate in order to ascertain what the ALJ would decide in this case.

That is, the record fairly clearly indicates the ALJ still would find plaintiff capable of returning to

1  her past work as a cleaner.  The only medical opinion sources in the record to provide any opinion as to the
2  social functional limitations plaintiff has are Dr. Lewis and Dr. Clifford.  As indicated, they opined in the
3  psychiatric review technique form they completed, that plaintiff had moderate difficulties in maintaining
4  social functioning, a step three finding. Tr. 137.  The mental residual functional capacity assessment form
5  they completed, however, broke the general category of social interaction down into more specific areas of
6  social functioning. See Tr. 141.  In that category, Drs. Lewis and Clifford, also as indicated, found plaintiff
7  to be moderately limited only in her ability to interact appropriately with the general public, while all other
8  areas of social functioning were noted to be subject only to mild limitations, including the area of getting
9  along with co-workers and peers. Id.

These more detailed findings – albeit in "check box" form – are strong evidence that Dr. Lewis and Dr. Clifford believed plaintiff to be moderately limited, in terms of her residual functional capacity, in the discreet area of interacting with the general public.  No other medical opinion source in the record opined as to any different social functional limitations, including the medical expert who testified at the hearing on remand and Katherine Brzezinski-Stein, Ph.D., the only psychologist or psychiatrist in the record to have actually examined plaintiff. See Tr. 110-15, 310-17.  Accordingly, the limitations Drs. Lewis and Clifford found are the only medical opinion source limitations upon which the ALJ could have relied in assessing plaintiff's residual functional capacity.  As just discussed, furthermore, those limitations at most support a moderate limitation in the area of public interaction, at least for RFC purposes.

Plaintiff goes on to argue that the ALJ's stated basis for finding she had moderate difficulties in maintaining social functioning in general at step three of the sequential disability evaluation process, could just as easily be read as indicating the ALJ would have found her moderately limited in more than just the area of interacting with the general public.  Specifically, the ALJ found as follows:

> In the domain of social functioning, the claimant has moderate difficulties.  The record establishes that the claimant developed a new relationship and recently remarried.  She lives with her husband and three children, with whom she enjoys good relationships. She is able to interact appropriately with medical providers.  However, the claimant has also indicated that she does not have much social interaction aside from her immediate family and occasional visits with her parents and siblings.  Therefore, moderate difficulties [in] maintaining social functioning are supported.

Tr. 215. From these statements, plaintiff posits, it could just as easily be assumed that the ALJ would have made a more detailed RFC assessment, in which plaintiff was precluded from interaction with all persons

1 aside from her immediate family, parents and siblings.

2 Plaintiff's supposition, however, ignores the fact, as just discussed, that the only medical opinion source evidence in the record to provide the more specific findings required to conduct a proper residual functional capacity assessment, support a determination of moderate limitations only in the area of being able to interact with the general public. As such, it cannot just as easily be assumed that the ALJ would end up finding broader social functioning limitations as argued by plaintiff. Moreover, to the extent that plaintiff is arguing her own testimony provides support for the more restrictive RFC assessment she now advocates, the ALJ – later in that section of her decision dealing with plaintiff's RFC – clearly called that testimony into question when she discounted plaintiff's credibility. See Tr. 216-19.

Given the nature of the findings of Dr. Lewis and Dr. Clifford discussed above, and in light of the ALJ's credibility determination (the validity of which is not at issue before the Court), the great likelihood is that the ALJ would have found plaintiff to at most have a moderate limitation in her ability to interact with the general public. Such a finding, furthermore, also likely would have resulted in the same ultimate disability determination the ALJ reached in this case, i.e., that plaintiff was capable of returning to her past relevant work as a cleaner. As noted by defendant, the Dictionary of Occupational Titles ("DOT") states that dealing with people is not a significant requirement for being able to perform the job of cleaner. See DOT 323.687-014, 1991 WL 672783. Thus, a moderate limitation in interacting appropriately with the general public would not preclude performance of this job.

Plaintiff, though, counters that the DOT's language is irrelevant here, because the testimony of the vocational expert at the hearing on remand is clear, in that the job of cleaner is performed "in groups." Tr. 323-24. But, as discussed above, the only medical opinion source evidence in the record concerning this issue, demonstrates that plaintiff has only a mild limitation in her ability to get along with co-workers or peers. Tr. 141. Indeed, other medical opinion source evidence further indicates an ability on plaintiff's part to not only work with others, but interact with the general public as well. For example, Dr. Brzezinski-Stein concluded that "potential occupational goals" for plaintiff included security guard, "driver/delivery," medical/dental assistant, and nurse aide, all of which clearly would require at least some public interaction. Tr. 115. Accordingly, the job of cleaner would not be precluded for this reason.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was

REPORT AND RECOMMENDATION
Page - 7

1 | not disabled, and should affirm the ALJ's decision.

2 | Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **October 9, 2009**, as noted in the caption.

DATED this 15th day of September, 2009.

Karen L. Strombom
United States Magistrate Judge